**319·15**

NO. PD 0319 - 15

IN THE

COURT OF CRIMINAL APPEALS

FOR THE

STATE OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 01 2015

Abel Acosta, Clerk

Petition for Review of the

Eighth Court of Appeals

Judgment in No. 08-12-00355-CR

Affirming conviction in Cause No. 20090D92461

From the 346th Judicial District Court

El Paso County, Texas

**LAURA KNIGHT**

**Appellant**

**v.**

**THE STATE OF TEXAS**

**Appellee**

FILED IN
COURT OF CRIMINAL APPEALS

SEP 16 2015

Abel Acosta, Clerk

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

LAURA KNIGHT
Pro Se
219 DOLAN ST.
EL PASO, TEXAS 79905
Telephone Number (915) 471-7498
E-Mail Address:
Salomelknight3714@att.net

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................. i

INDEX OF AUTHORITIES ....................................... ii

STATEMENT REGARDING ORAL ARGUMENT........................... 1.

STATEMENT OF THE CASE ................................... 2.

STATEMENT OF PROCEDURAL HISTORY ................................ 3.

GROUNDS FOR REVIEW ....................................... 4.

ARGUMENT ................................................ 5.–11.

PRAYER FOR RELIEF ...................................... 12.

CERTIFICATE OF SERVICE .................................. 13.

APPENDIX ............................................... 14.

# LIST OF AUTHORITIES

## I.     FEDERAL CASES

Page

Jackson v. Virginia, 443 U.S. 307, 61 L. Ed. 2d 560 (1979). ........... 6.


TEXAS CASES

Bass v. State, 270 S.W.3d 557 (Tex. Crim. App. 2008). ............... 10.

Nobles v. State, 843 S.W.2d 503 (Tex. Crim. App. 1992). ............ 9.

Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991). ............. 7.

Rodriguez v. State, 819 S.W. 2d 871 (Tex. Crim. App. 1991). ....... 8.

Ford v. State, 845 S.W.2d (Civ. App. – Houston [1st Dist.] 1992. .... 6.

## II.    CONSTITUTION

Page

Federal

5th & 14th Amendment U.S. Constitution .............................. 10.

State

Art. 1, §13 & §19 Texas Constitution .................................. 10.

## III.   STATUTES

Texas Code of Criminal Procedure 1.04 ................................ 10.

Texas Penal Code §6.01 ................................................ 8.

## IV.    RULES

Texas Rules of Evidence 404 ........................................... 8., 9.

# STATEMENT REGARDING ORAL AGRUMENT

Appellant waives the right to oral argument.

## STATEMENT OF THE CASE

Appellant was convicted of unlawful possession of a controlled substance before the trial court, i.e. possession of hydrocodone. She appealed her conviction before the 8th Court of Appeals and the trial court's judgment was upheld by the appellate court on January 28, 2015.

Appellant contends the evidence is legally insufficient to support her conviction because the State failed to prove (i) that she knowing or intentionally possessed the hydrocodone, (ii) that the pills she received from the pharmacy were hydrocodone, or (iii) that the hydrocodone she received weighed between 28 and 200 grams as charged. Appellant also argues that the trial court erroneously admitted extraneous-offense evidence during the guilt-innocence phase of her trial.

Appellant contends that the trial court did not enforce its pre-trial discovery order as to disclosure of the state's witnesses and such refusal to enforce its pre-trial order not only violated Texas law as to discovery, it was contrary to Rule 404, Tex.R. of Evid., and thereby denied appellant a fair trial.

## STATEMENT OF PROCEDURAL HISTORY

On May 21, 2009 Appellant, LAURA KNIGHT, was indicted for unlawful possession of a controlled substance in penalty group three, to wit: hydrocodone, having an aggregate weight, including adulterants and dilutants, of 28 grams or more but less than 200 grams, alleged to have occurred on or about July 19, 2008.

Appellant elected a trial by jury and on October 31, 2009 she was found guilty as charged. In accordance with the jury's verdict and recommendation as to punishment the trial court sentence Appellant to two (2) years in prison.

Appellant appealed her conviction to the 8th Court of Appeals and on January 28, 2015 the appellate court upheld the conviction. From this conviction Appellant now files her Petition for Discretionary Review before the Texas Court of Criminal Appeals.

## GROUNDS FOR REVIEW

The Court of Appeals has disregarded a material question of law necessary to the court's decision; and, alternatively, the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court as to call for an exercise of the Court of Criminal Appeals' power of supervision.

1.     The Court of Appeals incorrectly upheld the judgment of the trial court in that the evidence introduced at trial was insufficient as a matter of law or fact to sustain the jury's verdict.

2.     The Court of Appeals incorrectly upheld the trial court's refusal to enforce its Pre-Trial and Discovery Order by permitting the State to call rebuttal witnesses during the innocent-guilt phase of the trial in violation of Rule 404, Tex.R.Evid.

## ARGUMENT IN SUPPORT OF GROUNDS FOR REVIEW

The Court of Appeals has disregarded a material question of law necessary to the court's decision; and, alternatively, the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court as to call for an exercise or the Court of Criminal Appeals' power of supervision.

**1.     The Court of Appeals incorrectly upheld the judgment of the trial court in that the evidence introduced at trial was insufficient as a matter of law or fact to sustain the jury's verdict.**

Appellant was charged by indictment with unlawful possession of a controlled substance, i.e. hydrocodone weighing between 28 and 200 grams. A third degree felony. However, a review of the trial transcript shows that at trial:

1. No hydrocodone was introduced as evidence; (RR. Vol 2 of 5, Page 11 at lines 20-22).

2. No criminal laboratory reports were introduced to establish that the drugs, the subject of the States' prosecution, were in fact hydrocodone; (RR Vol. 2-5, Page 8, line 11-19 & Page 11, line 20-22).

3. No chain of custody exists as to the drugs attempted to be returned by Appellant and the drugs testified to by the state's witnesses: Ms. Sheryl Maxsom, Mr. John Williamson and Mr. Rick Fernandez; and,

4. No one was introduced or qualified as an expert witness by the State.

Appellant recognizes that Texas law holds that at trial the presumption of innocence is in favor of the defendant; but on appeal the presumption is that a conviction was regular and with be upheld unless a review of the trial record shows sufficient evidence to the contrary. **Ford v. State, 845 S.W.2d (Civ. App. – Houston [1st Dist.] 1992.**

It is important to note that Appellant never stipulated to the State's assertion that the drugs, the subject of this possession trial, was hydrocodone. Appellant never testified at any time during trial nor entered any plea of guilt. Appellant in researching her case discovered that although the Court of Criminal Appeals does not conduct a de novo factual sufficiency review, it can determine whether the Court of Appeals applied the correct standard. **Jackson v. Virginia, 443 U.S. 307, 61 L. Ed. 2d 560 (1979).** Further, the standard for review is the

same for both direct and circumstantial evidence cases. **Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991).**

Appellant asserts, with no disrespect intended, that Justice Steven L. Hughes of the 8th Court of Appeals, was wrong in his statements written as part of the Court of Appeals opinion at page 6., to the effect that: " *The Walgreens' clerk who provided the hydrocodone to Appellant recalled that Appellant asked for the prescription "by name." The Walgreen's security system video recording of the transaction shows Appellant holding and looking at the prescription bottle." The Walgreens' El Paso District Pharmacy Supervisor testified that the label on the prescription vial showed that the hydrocodone was for Judy Cox.* " (RR – Vol 3-5, P 113-127).

A review of the video which is States' Exhibit 5, shows two undeniable facts:

1.    There was no audio thus what transpired between the Appellant and the Walgreen's clerk is unknown to the viewer; and,

2.    The video shows that the clerk handed to Appellant a bag, presumably, a Walgreen's bag which does not show that Appellant saw a prescription label nor a bottle containing 240 hydrocodone pills.

7.

The above point is critical because this is the evidence the State is relying on to establish that Appellant intentionally and knowingly exercised the voluntary act of possession or control of the prohibited substance for a sufficient time to permit her to terminate her control. Yet, how do you read a prescription label through a paper bag? This evidence does not comply with the requirements of **Texas Penal Code §6.01** as to the requirement of a voluntary act or omission. Appellant asserts that there does not exist legal nor factual sufficiency to uphold her conviction. See **Rodriguez v. State, 819 S.W.2d 871 (Tex. Cr. App. 1991).**

**2.  The Court of Appeals incorrectly upheld the trial court's refusal to enforce its Pre-Trial Order by permitting the State to call rebuttal witnesses during the innocent-guilt phase of the trial in violation of Rule 404, Tex.R.Evid.**

Appellant would show this Court that on January 21, 2010 the trial court entered its **Pre-Trial and Discovery Order**. The order states in relevant part: STATE WITNESSES ... (the State was required to identify) *"the names and addresses of all witnesses the State will call in its case-in-chief at the guilt stage of trial, in the punishment stage of the trial, and that the State can*

*reasonably anticipate calling in the rebuttal stage of trial shall be given to the defense prior to trial."*

EXPERT WITNESS AND REPORTS ... *"The State shall designate expert witnesses to be called at trial by Friday, 2 weeks prior to trial."*

At trial the State called Ms. Carol Wright and Appellant's sister, Ms. Rosario Ortega, to testify at the innocence-guilt phase of appellant's trial regardless of the terms of **Tex.R.Evid. 404** and/or the trial court's **Pre-Trial and Discovery Order.** Appellant asserts that the appellate court erred in upholding the trial court's decision permitting Ms. Carol Wright and Appellant's sister, Ms. Rosario Ortega, to testify. (RR – Vol. 2 of 5, Page 7, line 1-25, Page 8, 1-25). Texas Rule of Evidence 404 embodies the "established principle that a defendant is not to be tried for collateral crimes or for generally being a criminal." **Nobles v. State, 843 S.W.2d 503 (Tex. Crim. App. 1992).**

Justice Steven L. Hughes writing for the appellate court asserts that although Appellant challenged the trial court's ruling permitting the State to offer extraneous-offense evidence in its case-in-chief, the defense opening statement "opened the door" to the admission of extraneous-offenses evidence in the State's case-in-chief to rebut the defensive theories presented in the

opening statement. See 8th Court of Appeals opinion at page 12. The appellate court cited this Court's opinion in **Bass v. State, 270 S.W.3d 557, 563 n.7 (Tex. Crim. App. 2008)** in support of its decision that Appellant's counsel's opening statement "opened-the-door" for the State to offer its rebuttal witnesses. Yet the jury was instructed at the start of trial that "the argument of the State and defense counsel is not evidence." The trial court admonished the jury as to what is evidence.

Appellant asserts that she never testified about her "character" nor called any witness to do so. Granted, Rule 404 requires the defendant to request in advance of trial reasonable notice that the State intents on introducing in its case-in-chief evidence of other crimes, wrongs or acts. See **Tex.R.Evid. 404.** Nonetheless, Appellant asserts that it is a violation of the **"Due Process" clause under the 5th and 14th Amendment of the United States Constitution** and **"Due Process of Law" clause under Art. 1, §13 and §19 of the Texas Constitution** and **Code of Criminal Procedure 1.04** to refuse to follow, or ignore the law as to how a fair trial will be conducted.

The appellate court writes at page 12, of its opinion that ... "*A defense opening statement "can open the door" in the admission of extraneous-offense evidence to the State's case-in-chief to rebut the defensive theories presented in the opening statement. Id. At 563.*" However, such an argument

is a justification pretext that is tantamount to cancelling or neutralizing the purpose and legal effect of Texas Rule of Evidence 404 and why even issue a Pre-Trial and Discovery Order if the same is going to be ignored at trial. The jury is probably capable of following the presentation of the evidence and figuring out whether the defendant's counsel or the defendant ever complied with its representations made at the opening statements of the trial.

For the foregoing reasons Appellant asserts that one, there is insufficient evidence to sustain her conviction and two, the conduct of her trial was not fair in that the violations of the above rules of evidence and procedure probably caused the rendition of an improper judgment.

## PRAYER FOR RELIEF

Appellant respectfully pray that this Honorable Court grant her Petition for Discretionary Review and reverse the decision of the 8th Court of Appeals. Appellant further moves that this Court grant a new trial or reverse and acquit Appellant or enter such orders as it deems will do justice herein.

Respectfully submitted

LAURA KNIGHT
Appellant and Pro Se
219 Dolan St.
El Paso, Texas 79905
Telephone Number:      (915) 471-7498
Fax Number:      (915) 262-0307
E-Mail:      Salomeknight3714@att.net

12.

## CERTIFICATE OF SERVICE

The undersigned affirms that a true and accurate copy of the foregoing instrument filed on behalf of the Petition for Discretionary Review of LAURA KNIGHT, appellant, has been submitted to the El Paso District's Office, the appellee, by submission of a copy to the following attorney of record:

JAIME ESPARZA
District Attorney
34th Judicial District
El Paso District Attorney's Office
500 E. San Antonio Ave., Room 201
El Paso, Texas 79901

Tel.   (915) 546-2059
        (915) 533-5520

ATTORNEY FOR THE STATE

_____  Certified Mail Return Receipt Requested.

___✓___  Fax telephone transmission prior to 5:00 p.m.

_____  Personal Delivery to a party.

_____  1st Class U.S. Mail.

_____  E-Mail

Done this __28th__ day of August 2015

_____
LAURA KNIGHT

13.

# APPENDIX

A.    January 28, 2015 Judgment and Opinion of the 8th Court of Civil Appeals, LAURA KNIGHT v. THE STATE OF TEXAS, No. 08-12-00355-CR.


B.    Pre-Trial and Discovery Order, 346th Judicial District Court, THE STATE OF TEXAS v. LAURA KNIGHT, No. 20090D02461.

C.    DVD diskette, States Exhibit #5, 346th Judicial District Court, THE STATE OF TEXAS v. LAURA KNIGHT, No. 20090D02461.



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LAURA KNIGHT, | § | No. 08-12-00355-CR |
| Appellant, | § | Appeal from the |
| v. | § | 346th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20090D02461) |
| | § | |

## O P I N I O N

Appellant Laura Knight was recorded on video at a pharmacy picking up a hydrocodone prescription for a woman who had died five days earlier. Appellant was found guilty of possession of a controlled substance, and sentenced to two years' confinement. Appellant raises two issues on appeal. Appellant contends the evidence is legally insufficient to support her conviction because the State failed to prove (i) that she knowing or intentionally possessed the hydrocodone, (ii) that the pills she received from the pharmacy were actually hydrocodone, or (iii) that the hydrocodone she received weighed between 28 and 200 grams as charged. Appellant also argues the trial court erroneously admitted extraneous-offense evidence during the guilt-innocence phase of her trial. We hold the evidence was sufficient to support Appellant's conviction for

unlawful possession of hydrocodone, and that the trial court did not err in admitting the evidence of Appellant's extraneous offenses. Accordingly, we affirm Appellant's conviction.

## BACKGROUND

Appellant's mother, Josephina De La Rosa, was a resident at a foster care home. Each resident's medication at the home was stored in an unlocked kitchen cabinet in a box labeled with the patient's name. Although medication was typically administered by the foster home caregivers, Appellant had access to the kitchen cabinet where the medicines were kept and could administer the medications prescribed for her mother.

Another resident of the foster care home, Judy Cox, suffered from a painful degenerative spinal disease for which she was prescribed hydrocodone in a quantity of 240 pills with additional refills permitted. Carol Wright, the operator of the foster care home, would request Judy's hydrocodone refills by phone, pick up the prescription at the pharmacy, and store the hydrocodone prescription in the kitchen cabinet. Judy's sister, Sheryl Maxsom, had arranged for an express pay service at Walgreens under which the co-pay cost of the refills for Judy's hydrocodone prescription would be charged automatically to Sheryl's checking account when Carol Wright picked up the hydrocodone for Judy. The co-pay cost for each of Judy's hydrocodone refills was $17.07.

Judy Cox died on July 14, 2008, and her memorial service was held on July 18, 2008. On July 19, 2008, Sheryl received an email alert on her phone indicating that Walgreens had charged $17.07 to her bank account. Sheryl had not picked up a prescription on July 19, 2008, and Carol Wright informed her that she had not phoned in a refill for Judy's hydrocodone.

On August 1, 2008, Sheryl and the Walgreens' store manager, John Williamson, reviewed

2

a Walgreens' security video recording corresponding with the date and time Judy's prescription was picked up. From the video recording, Sheryl recognized Appellant standing at the pharmacy counter. Sheryl notified the police that she had identified the person who had picked up the prescription. She also discussed the matter with Carol Wright. Several days later, Appellant left a voice message on Sheryl's phone identifying herself and explaining she had gone to Walgreens to pick up her son's medication, and Walgreens had accidentally given her Judy's hydrocodone prescription instead. At a subsequent party attended by Appellant, Carol Wright, and others, Carol Wright mentioned that someone had obtained Judy's medication after her death. Later, Appellant telephoned Carol Wright and also informed her that she had discovered that the pharmacy had erroneously given her Judy's medication when she went to pick up her son's medication.

At Appellant's request, Carol Wright accompanied Appellant to return the pills to Walgreens. Carol, who is familiar with hydrocodone, noted there were 24 pills in "a good sized bottle" whose label contained Judy's name and indicated the bottle had contained 240 hydrocodone tablets. Carol described Appellant as agitated and extremely adamant that Walgreens issue a letter stating that it was at fault for giving her the medication. Walgreens' El Paso District Pharmacy Supervisor, Rick Fernandez, issued the requested letter to Appellant which stated:

> Laura Knight returned #24 tablets of Hydrocodone/APAP [(]10mg/325mg) from a prescription vial labeled [xxxxxxx]-06435 for Judy Cox. Ms. Knight received the vial in error. Furthermore, Carol Wright did not order this medication for Ms. Judy Cox. I apologized to Ms. Knight for the inconvenience for this matter.

## DISCUSSION

*Sufficiency of the Evidence*

3

In Issue One, Appellant contends the evidence is legally insufficient to sustain her conviction for intentionally and knowingly possessing hydrocodone having an aggregate weight of 28 to 200 grams. In particular, Appellant argues the evidence was insufficient to prove: (1) that she acted intentionally or knowingly, because the Walgreens pharmacy letter indicated she had received the hydrocodone "in error"; (2) that she actually possessed hydrocodone, since the pills she received were never tested in a laboratory; and (3) that the hydrocodone was of the requisite weight, since the pills she received were never weighed.

### Standard of Review

In a legal sufficiency review, we consider all the evidence in the light most favorable to the verdict, and the reasonable inferences that flow from it, to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010). "If, given all of the evidence, a rational jury would *necessarily* entertain a reasonable doubt as to the defendant's guilt, the due process guarantee requires that we reverse and order a judgment of acquittal." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004).

In performing our sufficiency review, we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131 (2000). We presume the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). We determine only whether the necessary inferences are reasonable based upon the combined and cumulative

4

force of all the evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex.Crim.App. 2007). Each fact is not required to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* at 13 (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App. 1993)). Circumstantial evidence is as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara*, 152 S.W.3d at 49.

### Analysis

We measure the sufficiency of the evidence by the elements of the offense as defined by the "hypothetically correct jury charge" for the case. *Miles v. State*, 357 S.W.3d 629, 631 (Tex.Crim.App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Hydrocodone is classified as a controlled substance in Penalty Group 3. TEX. HEALTH & SAFETY CODE ANN. § 481.104(a)(4)(West Supp. 2014). It is a third-degree felony to knowingly or intentionally possess hydrocodone having an aggregate weight of 28 grams or more but less than 200 grams (including adulterants or dilutants), unless, among other things, the person obtained it under a valid prescription.[1] *Id.* at § 481.117(a), (c)(West 2010). The indictment

---

[1] The State was not required to negate the exceptions provided under section 481.117(a). TEX. HEALTH & SAFETY CODE ANN. § 481.184(a)(West 2010). Rather, the person claiming the benefit of an exception has the burden of going forward with the evidence with respect to the exception. *Id.*

5

charged that on or about July 19, 2008, Appellant knowingly or intentionally possessed a controlled substance, hydrocodone, having an aggregate weight, including adulterants and dilutants, of 28 grams or more but less than 200 grams. Thus, under a hypothetically correct jury charge, the State was required to prove that Appellant knowingly or intentionally possessed hydrocodone weighing more than 28 grams but less than 200 grams, including adulterants and dilutants.

Appellant first contends the evidence is insufficient to show she acted intentionally or knowingly because the Walgreens pharmacy letter indicated that she had received the hydrocodone "in error."[2] While the letter constitutes some evidence that Appellant may have lacked the necessary intent or knowledge, it was not the only evidence of mens rea before the jury. Evidence at trial indicated Appellant had access to Judy Cox's prescription vial, which contained the information necessary to order a refill of the hydrocodone prescription by telephone. The Walgreens' clerk who provided the hydrocodone to Appellant recalled that Appellant asked for the prescription "by name." The Walgreens' security system video recording of the transaction shows Appellant holding and looking at the prescription bottle. The Walgreens' El Paso District Pharmacy Supervisor testified that the label on the prescription vial showed that the hydrocodone was for Judy Cox. Judy's prescription was on an express pay account at Walgreens, but Appellant had no such account, and yet Appellant paid nothing for the prescription she obtained at Walgreens. Appellant's claim that she was given Judy's prescription by mistake instead of her son's prescription was negated by evidence that no prescription for Appellant's son was available

---

[2] A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a)(West 2011). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. TEX. PENAL CODE ANN. § 6.03(b)(West 2011).

6

for pickup on July 19, 2008, and that his prescription was not presented to the pharmacy until a later date. Likewise, Appellant's claim that she received only 24 pills was negated by Walgreens' records indicating that 240 pills were dispensed for Judy Cox's prescription but, as noted in Walgreens' letter, Appellant returned only 24 tablets to Walgreens pharmacy.

Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App. 1978); *Agripino v. State*, 217 S.W.3d 707, 715 (Tex.App. – El Paso 2007, no pet.). Ordinarily, proof of a culpable mental state must be inferred from the acts, words, and conduct of the accused and the surrounding circumstances. *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex.Crim.App. 1984); *Agripino*, 217 S.W.3d at 715. The evidence here was legally sufficient to negate Appellant's defensive theory of mistake and to show that Appellant both knowingly and intentionally possessed the hydrocodone.

Appellant also asserts the evidence was legally insufficient to establish the pills she possessed were actually hydrocodone, because the pills were never tested by a laboratory. Without citation to authority, Appellant asserts that a controlled substance is required to be tested by a certified lab analyst or chemist. The 24 pills that Appellant returned to Walgreens were not confiscated by law enforcement officers but were apparently processed by Walgreens for destruction by a third-party. Therefore, the pills could not be tested. Instead, the State presented testimonial evidence that the controlled substance Appellant possessed was hydrocodone.

This evidence included the testimony of Walgreens' District Supervisor Fernandez, who had been a licensed pharmacist since 1994. Fernandez examined the large prescription vial that Appellant presented to him when she returned the pills; he counted 24 pills as its contents, observed the label showing the medication had been prescribed for Judy Cox, identified the pills as

7

hydrocodone with acetaminophen, and informed Appellant that she needed to return the pills directly to the pharmacy for destruction. He testified that pharmacists do not perform scientific tests on drugs and stated that he did not perform any scientific analysis on the pills. However, Fernandez explained that hydrocodone combined with acetaminophen is listed as a "schedule 3" medication and that no schedule 2 hydrocodone "by itself" is kept in the pharmacy. Fernandez stated that he has dispensed hydrocodone "thousands of times," and testified, without objection, that the markings on the pills Appellant had presented to him "matched" the markings for hydrocodone, and that he was sure the pills were hydrocodone and could not be anything else.[3] Walgreens' store manager John Williamson testified that his physical inventory of all hydrocodone pills in the pharmacy established there was no surplus of hydrocodone pills. Instead, the correct number of hydrocodone pills on hand was consistent with the dispensing of 240 hydrocodone tablets in a large bottle like the one Appellant returned.

In addition to this testimony, Carol Wright described the pills as "roundish, yellowish" and testified that the bottle containing the tablets was labeled with Cox's name and listed hydrocodone as its contents. Further, there was evidence that Appellant left a voice message on Sheryl Maxsom's phone in which Appellant said Walgreens had accidentally given her Judy's hydrocodone prescription. Without objection, Appellant's sister Rosario also testified that Appellant was present when Carol Wright learned about a problem with Judy Cox's prescription, and Appellant later told Rosario that Walgreens had mistakenly given her Judy's hydrocodone.

Walgreens' store manager John Williamson testified that the electronic journal, or register

---

[3] The Court of Criminal Appeals has recognized that an experienced law enforcement officer may be qualified to testify that a green leafy plant substance is marijuana because it has distinctive characteristics different from other green leafy plant substances, but cannot testify that a white or brown powder substance with no unique identifying features is heroin. *See Curtis v. State*, 548 S.W.2d 57, 59 (Tex.Crim.App. 1977).

8

recording, indicated Judy Cox's hydrocodone was picked up on July 19, 2008 at 4:34 p.m. and that the transaction had been verified by observing the security camera's video recording, which showed Appellant involved in the transaction at 4:34 p.m. He also testified that 24 pills would be dispensed in a small vial, unlike the large 30-gram vial that Appellant returned, which would be used to dispense 240 pills. Appellant did not object when the State offered into evidence Williamson's photograph of 240 hydrocodone tablets from the same manufacturer and having the same strength as those prescribed and identified in Judy Cox's patient profile. The evidence here was legally sufficient to show that the pills possessed by Appellant were in fact hydrocodone.

Appellant also contends the evidence is insufficient to establish the amount of hydrocodone she allegedly possessed because the actual tablets she possessed were not weighed. The State was required to prove that Appellant possessed 28 grams or more but less than 200 grams of hydrocodone, including adulterants and dilutants. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.104(a)(4)(West Supp. 2014), 481.117(a)(c)(West 2010). Detective Deanda testified she was not able to obtain the pills Appellant possessed for the purpose of weighing and testing because Appellant had returned the pills to Walgreens. Walgreens' store manager John Williamson testified that the large 30-gram vial that Appellant returned would be used to dispense 240 pills. Williamson testified that his physical inventory of all hydrocodone pills in the pharmacy established there was no surplus of hydrocodone pills. Instead, the correct number of hydrocodone pills on hand was consistent with the dispensing of 240 hydrocodone tablets in a large bottle like the one Appellant returned. At the State's request, Fernandez weighed a quantity of 240 hydrocodone pills from the same manufacturer and type as those dispensed to Appellant on July 19, 2008, under Judy Cox's prescription, and which Appellant had returned to the pharmacy.

9

Without objection, Fernandez testified that 240 pills, without the vial, weighed over 100 grams with adulterants and dilutants. This evidence was legally sufficient to show that the amount of hydrocodone possessed by Appellant had an aggregate weight of 28 to 200 grams.

Based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict, we conclude a rational fact finder could have reasonably inferred that Appellant did not receive the hydrocodone in error but was aware that the hydrocodone prescription was for Judy Cox, and that Appellant intentionally and knowingly possessed hydrocodone having an aggregate weight of more than 28 grams but less than 200 grams, including adulterants and dilutants. *Hooper*, 214 S.W.3d at 16-17. Because the evidence is legally sufficient to support Appellant's conviction, Issue One is overruled.

### Evidentiary Rulings

In Issue Two, Appellant complains the trial court abused its discretion during the guilt-innocence phase of trial when it allowed the State to present testimonial evidence of Appellant's extraneous offenses. Appellant argues that the testimony constituted character conformity evidence and was unduly prejudicial, and contends the State was required but failed to provide notice of its intent to use that evidence.

The testimony at issue was presented by two witnesses, Carol Wright and Appellant's sister, Rosario Ortega. Carol Wright testified that after another patient at her foster care home had died, Appellant had asked Carol if she would sell her the deceased patient's hydrocodone. Appellant's sister, Rosario, testified that Appellant had been prescribed hydrocodone after injuring her back twelve to fifteen years earlier and had been prescribed hydrocodone again in 2007 following surgery.

10

*Standard of Review*

We review the admission of extraneous-offense evidence for an abuse of discretion. *De La Paz v. State,* 279 S.W.3d 336, 343 (Tex.Crim.App. 2009); *Prible v. State,* 175 S.W.3d 724, 731 (Tex.Crim.App. 2005). A trial court does not abuse its discretion if the decision to admit or exclude the evidence is within the "zone of reasonable disagreement." *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (opin. on reh'g). A trial court's determination on the admissibility of extraneous-offense evidence typically falls within the zone of reasonable disagreement if the evidence shows: (1) that an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz,* 279 S.W.3d at 344. If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we will not disturb it even if the trial court gave the wrong reason for the correct ruling. *Id.*

*Analysis*

Evidence of extraneous offenses or prior wrongful acts is generally not admissible during the guilt-innocence phase as evidence that a defendant acted in conformity with his character by committing the charged offense. TEX. R. EVID. 404(b); *Johnston v. State,* 145 S.W.3d 215, 219 (Tex.Crim.App. 2004); *Montgomery,* 810 S.W.2d at 386. Texas Rule of Evidence 404(b) embodies the "established principle that a defendant is not to be tried for collateral crimes or for generally being a criminal." *Nobles v. State,* 843 S.W.2d 503, 514 (Tex.Crim.App. 1992). However, evidence of extraneous misconduct or other crimes may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or

11

absence of mistake or accident[.]" TEX. R. EVID. 404(b); *Moses v. State,* 105 S.W.3d 622, 626 (Tex.Crim.App. 2003); *Powell v. State,* 63 S.W.3d 435, 438 (Tex.Crim.App. 2001). By raising a defensive theory, the defendant "opens the door" for the State to offer rebuttal testimony regarding an extraneous offense if the extraneous offense has characteristics common with the offense for which the defendant was on trial. *See Richardson v. State,* 328 S.W.3d 61, 71 (Tex.App. – Fort Worth 2010, pet. ref'd) (citing *Bell v. State,* 620 S.W.2d 116, 126 (Tex.Crim.App. 1980)).

Appellant challenges the trial court's ruling permitting the State to offer the extraneous-offense evidence in its case-in-chief, arguing that at that point in the trial, there was no defensive theory to rebut. However, Appellant chose to follow the State's opening statement with her own. The Texas Court of Criminal Appeals has recognized that, while not evidence, a defensive opening statement informs the jury of the nature of the defenses on which defendant will rely and the facts the defendant expects to prove in support of such defenses. *See Bass v. State,* 270 S.W.3d 557, 563 n.7 (Tex.Crim.App. 2008). When a defensive opening statement follows the State's opening, "the State may reasonably rely on this defensive opening statement as to what evidence the defense intends to present and rebut this anticipated defensive evidence during its case-in-chief as opposed to waiting until rebuttal." *Id.* A defense opening statement can "open the door" to the admission of extraneous-offense evidence in the State's case-in-chief to rebut the defensive theories presented in the opening statement. *Id.* at 563.

During her opening statement, Appellant observed that the State had promised to prove she intended to possess the hydrocodone and had knowledge that she possessed hydrocodone. Appellant argued that the State could not prove intent or knowledge because it was not true, declaring "that's what we are going to present to you during this trial," and asserted she would

show with competent evidence that the State could not prove that she knew she was getting another person's prescription. Thus, in her opening statement Appellant both identified defenses to the State's assertions that she intentionally and knowingly possessed hydrocodone and raised mistake as a defense to her receipt of the hydrocodone. Because Appellant's opening statement "opened the door" to evidence of Appellant's intent, Carol and Rosario's testimony was admissible to rebut Appellant's defensive theories. TEX. R. EVID. 404(b); *Bass*, 270 S.W.3d at 563; *Powell*, 63 S.W.3d at 439–40. The State was therefore allowed to rebut this anticipated defensive evidence during its case-in-chief as opposed to waiting until rebuttal.

Further, the testimony of Carol and Rosario had relevance apart from any tendency to prove character conformity because that testimony logically made the elemental facts of intent and knowledge more probable and Appellant's defense of mistake less probable. *See Montgomery*, 810 S.W.2d at 387–88. The complained-of extraneous evidence was thus admissible under Rule 404(b) to prove intent, knowledge, and absence of mistake. TEX. R. EVID. 404(b); *see Moses*, 105 S.W.3d at 626 (rebuttal of a defensive theory of mistake or accident is a permissible purpose to admit extraneous-offense evidence under Rule 404(b)). The trial court's decision to admit the extraneous-offense evidence falls within the zone of reasonable disagreement. The trial court therefore did not abuse its discretion in admitting the evidence.

Appellant also argues that the trial court abused its discretion when it admitted the extraneous-offense evidence in the absence of notice from the State of its intent to utilize this evidence. By a written Pre-Trial and Discovery Order, the trial court directed the State to give written notice to Appellant seven days prior to trial regarding any extraneous offenses that it intended "to use in its case-in-chief other than that arising out of the transaction on trial." The

13

State contends Appellant failed to preserve any error regarding lack of notice because she did not seek a continuance when the State notified her that it intended to use the complained-of testimony.[4] We agree.

The purpose of requiring notice of the State's intent to use extraneous-offense evidence "is to adequately make known to the defendant the extraneous [acts] the State intends to introduce at trial and to prevent surprise to the defendant." *Martin v. State*, 176 S.W.3d 887, 900 (Tex.App. – Fort Worth 2005, no pet.). To preserve error regarding the State's failure to provide reasonable notice of its intent to use extraneous-offense evidence, a defendant must request a continuance to mitigate the effects of surprise. *Martines v. State*, 371 S.W.3d 232, 249 (Tex.App. – Houston [1st Dist.] 2011, no pet.); *Martin*, 176 S.W.3d at 900; *see also Oprean v. State*, 201 S.W.3d 724, 730 n.10 (Tex.Crim.App. 2006) (Cochran, J. concurring) (any error in causing "surprise" to the defense is forfeited on appeal unless the defendant has also requested a postponement or recess). Because Appellant did not seek a continuance, her complaint concerning lack of notice is not preserved for our consideration.

Appellant also made a Rule 403 objection to admission of this evidence. Evidence which is admissible may be excluded if the danger of unfair prejudice substantially outweighs its probative value. TEX. R. EVID. 403; *Montgomery*, 810 S.W.2d at 389. Without providing any Rule 403 balancing-test analysis, Appellant merely asserts the admission of the evidence was

---

[4] The State also argues that Appellant waived error by failing to timely request notice of any extraneous offenses as required by Rule 404(b). *See* TEX. R. EVID. 404(b)(providing that "upon timely request by the accused in a criminal case," the State shall give reasonable notice in advance of trial or its intent to introduce in its case-in-chief evidence of other crimes or wrongs); *see also Webb v. State*, 995 S.W.2d 295, 298 (Tex.App. – Houston [14th Dist.] 1999, no pet.) (the failure to request notice of extraneous offenses precludes an accused from complaining about the sufficiency of the notice he received). The trial court's Pre-Trial and Discovery Order, however, directed the State to give written notice to Appellant without predicating the State's obligation on the Rule 404(b) requirement that Appellant first timely request notice. Under the pre-trial order, the State's obligation to provide notice was absolute, and Appellant was not required to timely request notice in order to complain about the lack of notice on appeal.

14

"highly prejudicial." Where a proper Rule 403 objection is made, the trial court must conduct a balancing test. *Rojas v. State,* 986 S.W.2d 241, 250 (Tex.Crim.App. 1998); *Williams v. State,* 958 S.W.2d 186, 195 (Tex.Crim.App. 1997) (holding trial court has no discretion whether to conduct balancing test under Rule 403). In conducting a Rule 403 balancing test, the trial court must balance (1) the inherent probative value of the evidence and (2) the State's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be needlessly cumulative. *See Gigliobianco v. State,* 210 S.W.3d 637, 641–42 (Tex.Crim.App. 2006). In practice, these factors may well blend together. *Id.*

Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. *Hammer v. State,* 296 S.W.3d 555, 568 (Tex.Crim.App. 2009). Based on this presumption, our review of the record, and the relevant Rule 403 criteria, we conclude the probative value of the extraneous-offense evidence was not substantially outweighed by any prejudicial impact. The testimony concerning Appellant's prior use of hydrocodone coupled with her prior request that Carol Wright sell her the hydrocodone of a deceased patient was probative and necessary for the State to rebut Appellant's contention that she had been provided Judy's hydrocodone prescription in error, as stated in the pharmacy's letter. This evidence was not cumulative of other evidence, and its presentation was concise. We conclude this evidence had little, if any, tendency to mislead or confuse the jury, and that any such tendency was substantially outweighed by its probative value to rebut Appellant's contention that she had

15

received the hydrocodone "in error."

Finding no abuse of discretion, we overrule Issue Two.

## CONCLUSION

We conclude that the evidence is legally sufficient to support Appellant's conviction and that the trial court did not abuse its discretion in admitting the extraneous-offense evidence. We therefore affirm the trial court's judgment. The trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that she was informed of her rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX. R. APP. P. 25.2(d). The certification is defective, and has not been corrected by either Appellant's attorney or the trial court. To remedy this defect, this Court orders Appellant's attorney, pursuant to TEX. R. APP. P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of her right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX. R. APP. P. 48.4, 68. Appellant's attorney is further ordered to comply with all of the requirements of TEX. R. APP. P. 48.4.


STEVEN L. HUGHES, Justice

January 28, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Publish)

16

IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
346TH JUDICIAL DISTRICT

THE STATE OF TEXAS

VS.                                                              CAUSE NO. **20090D02461**

LAURA KNIGHT

## PRE-TRIAL and DISCOVERY ORDER

The Court hereby enters the following orders relating to Pre-trial schedules and Discovery.

### STATE'S WITNESSES

The names and addresses of all witnesses the State will call in its case-in-chief at the guilt stage of trial, in the punishment stage of the trial, and that the State can reasonably anticipate calling in the rebuttal stage of trial shall be given to the defense prior to trial. This may be done by either filing the subpoena list or prospective witness list with the District Clerk or by directly delivering such information to the defense, or a combination of both. However, the State is not required to disclose the address of the alleged victim in this case unless expressly ordered to do so by the Court.

### EXPERT WITNESSES AND REPORTS

The State shall designate expert witnesses to be called at trial **by Friday, 2 weeks** prior to trial. The Defendant shall designate expert witnesses to be called at trial **by Friday, 1 week** prior to trial. The expert's written reports shall be made available for inspection after said designation. Results of any physical or mental examinations, scientific tests, experiments or comparisons and autopsies shall be made available for inspection upon request made by the Defense at a mutually agreed time.

### MOTIONS TO SUPPRESS

Motions to Suppress shall be filed **fourteen (14) days prior** to the 28.01 Motions Conference. All Motions to Suppress must be heard before the final Pre-Trial. Failure to file Motions to Suppress or request hearings according to this order will result in wavier of such Motions to Suppress.

### DAUBERT MOTIONS

Defendant's Daubert Motions shall be filed **fourteen (14) days prior** to the 28.01 Motions Conference. A hearing on said Motions must be requested at the 28.01 Motions Conference and shall be heard at the time set by the Court for all other 28.01 Motions. The State's Daubert Motions shall be filed at any time after Defendant's designation of experts, but must be scheduled for hearing no later than **three (3) days** prior to trial. Failure to file Daubert Motions or request hearings according to this court order will result in waiver of such Daubert challenges at trial.

## PHYSICAL EVIDENCE

At a mutually agreed time the State shall allow the Defense to inspect all physical evidence, to include all books, papers documents, photographs, videotapes, clothing, tangible objects, contraband or substances which the State intends to use in the trial of this cause, which were obtained from or belong to the accused, or which are exculpatory as that term is understood in Brady v. Maryland.

At a mutually agreed time the State shall allow the Defense to inspect all weapons alleged by the State to have been used by the defendant, his co-defendant(s) and/or co-conspirators in the commission of the indicted offense.

At a mutually agreed time the State shall allow the Defense to inspect all fingerprints, palm prints, footprints and reports of the same that are: (1) obtained at the scene of the alleged crime; and (2) alleged to have been made by the Defendant in the commission of the indicted offense.

## CONFESSIONS AND ORAL STATEMENTS

A copy of any written statement purportedly made by the Defendant (or oral statement recorded in accordance with V.A.C.C.P. Art. 38.22) is to be given to the Defense within a reasonable time.

## GRAND JURY TESTIMONY

If the Grand Jury testimony was reported, a transcript of such Grand Jury testimony shall be prepared and given to the Defense after the witness has testified at trial.

## PRIOR CRIMINAL RECORDS

Prior to trial, the State shall inform the Defense of all prior felony convictions and misdemeanor convictions involving moral turpitude which the State intends to use for impeachment of the Defendant at trial. This will be deemed complied with if the State allows the Defense to see the State's file and said information is contained on a rap sheet in the State's file.

Prior to trial, the State shall inform the Defense of the prior criminal record of all State's witnesses which shall include all prior felony convictions, misdemeanor convictions of moral turpitude, all arrests and charging instruments which were in existence or occurred at or after the time of the alleged offense or any other part of the criminal record of the witness which may show bias of the witness or motive as to why the witness would testify in the manner testified to at trial.

## EXCULPATORY/MITIGATING EVIDENCE

The State shall inform the Defense of all exculpatory or mitigating evidence which the State or its agents have in their possession and known to the State or law enforcement personnel. (To be understood in conformity with Brady v. Maryland).

## EXTRANEOUS OFFENSES

The State shall give written notice to the Defense **seven (7) days before trial** of any extraneous offenses which the State intends to use in its case-in-chief other than that arising out of the transaction on trial. Such notice shall reasonably inform the Defense of the nature of the extraneous offense(s).

If the parties are unable to agree to a mutually convenient time for purposes of carrying out this order, upon motion filed, the Court will enter orders directing the parties to meet at a specific place and time.

SIGNED and ENTERED this 21st day of January, 2010.

**JUDGE ANGIE JUAREZ BARILL**
**346TH JUDICIAL DISTRICT COURT**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**™

7013 2250 0001 1258 8564



UNITED STATES
POSTAL SERVICE®

1000        78701




U.S. POSTAGE
PAID
EL PASO, TX
79810
AUG 28, 15
AMOUNT
$8.99
R2304H108289-20

RETURN RECEIPT
REQUESTED

Ms. Laura Knight
219 Dolan St.
El Paso, TX 79905

Clerk of the Court
The Texas Court of Criminal
Appeals
209 West 14th St. Suite 106
Austin, TX 78701