

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOSE E. PINEDA PAZ, | § | No. 08-23-00296-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 13 |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | Cause No. 709327 |

**MEMORANDUM OPINION**[1]

A jury convicted Appellant Jose E. Pineda Paz of assault causing bodily injury to a family or household member and the trial court sentenced him to one day of incarceration in the Bexar County Adult Detention Center. On appeal, Appellant challenges the trial court's admission of a 911 recording and brings a claim of ineffective assistance of counsel. Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 5, 2023, officers from the San Antonio Police Department were called out to a home at around 2:00 a.m. for alleged domestic violence. Appellant's wife, Catalina Sanchez Pineda, testified she and her husband went to sleep late that night. When their two-year-old son

---

[1] This case was transferred from our sister court in San Antonio pursuant to the Texas Supreme Court's docket equalization efforts. *See* Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

1

was crying, she asked Appellant to help her. She had to work the next day, but he had the day off. Catalina next described that: "So he got mad. He got very upset. Like sometimes he would get upset." She also complained to him that he liked to be on the phone. She added that he never paid attention to her or assisted her. Catalina grabbed his phone and "put it in the carpet." She then laid down on her side facing towards the wall. She felt Appellant punch her in her back with his fist. Catalina felt pain when he hit her. She got up and ran towards the living room. As she yelled, other persons living in the house with the couple came into the living room. Catalina grabbed a cell phone, and when Appellant saw she was going to call the police, it appeared to her as if he wanted to leave with their two-year-old child. Catalina then called the police, about ten minutes after the assault.

Abbey Ruiz, Catalina's cousin and a housemate of the couple, testified that she heard Catalina crying. Ruiz asked Catalina what had happened, and Catalina said Appellant had punched her in the back. Ruiz said Catalina was crying, shaking, and afraid. Catalina called the police, and Appellant came out of his room. Appellant took the baby and wanted to leave with the baby. Ruiz stated the other males living in the home kept Appellant from leaving with the baby, and the police arrived.

Appellant left before the police arrived. The police officers talked to Catalina and took pictures of her back. EMS also assessed Catalina.

In his own defense, Appellant testified that after he went to bed, where he was lying down with their son, Catalina touched him and wanted to talk to him. He described it was this way every time she was upset or mad, so he ignored her. He started looking at his phone. Appellant next described that he put his phone under the pillow and went to get a glass of water and his son's milk, and when he returned, Catalina threw his phone at him. Catalina told him that he cared more

2

about the phone than he did about her. To calm her down, he grabbed her hand and put it at her waist behind her back. He testified that Catalina always got aggressive, wanting to hit him every time she was mad, and that was why he grabbed her to stop her. Catalina then screamed, claiming he had hit her. She went to the living room and said she was going to call the police. Appellant took his son and went into the living room. He then left the house.

After deliberating, a jury returned a verdict finding Appellant guilty of assault causing bodily injury as alleged in the information. The trial court sentenced Appellant to one day in jail. This appeal followed.

## II. ISSUES ON APPEAL

Appellant raises two issues on appeal. In his first issue, Appellant contends that the trial court erred in admitting the recording of Catalina's 911 call. Second, Appellant argues he was denied his Sixth Amendment right to effective assistance of counsel at trial.

## III. ADMISSION OF 911 CALL

Appellant first claims the trial court erred in admitting the recording of Catalina's 911 call because it was never properly authenticated as a 911 record, and it did not satisfy any hearsay exception in the rules of evidence. The State responds that the recording was properly authenticated by Catalina because she was a witness with knowledge of the call, and it was properly admitted as an excited utterance exception to hearsay.

### A. Authentication

Under Rule 104(a) of the Texas Rules of Evidence, a trial court decides any preliminary question about whether evidence is admissible at trial. *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). To be admissible, evidence must be relevant; and, if that evidence is not authentically what its proponent claims it to be, it is not relevant. *Id.* at 638.

3

Texas Rule of Evidence 901 governs the authentication requirement for admissibility of evidence, including sound recordings. Rule 901 provides in pertinent part:

> **(a) In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> **(b) Examples.** The following are examples only—not a complete list—of evidence that satisfies the requirement:
>
>> **(1) Testimony of a Witness with Knowledge.** Testimony that an item is what it is claimed to be.
>>
>> .        .        .
>>
>> **(5) Opinion About a Voice.** An opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

Tex. R. Evid. 901(a)-(b); *see Leos v. State*, 883 S.W.2d 209, 211–12 (Tex. Crim. App. 1994) (recognizing that Rule 901 governs the admissibility of electronic recordings, including sound recordings).

As a standard of review, we defer to the trial court's ruling on preliminary questions of admissibility, and we review those decisions for an abuse of discretion. *Tienda*, 358 S.W.3d at 638 (citing *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007)); *see generally Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010) (the trial court's decision to admit evidence is reviewed for abuse of discretion). Therefore, if the trial court's ruling that a jury could reasonably find proffered evidence authentic falls within a zone of reasonable disagreement, it will be upheld on appeal. *Tienda*, 358 S.W.3d at 638; *see also Buntion v. State*, 482 S.W.3d 58, 71 (Tex. Crim. App. 2016).

During Catalina's testimony, defense counsel objected to the admission of the entirety of the 911 call because the State had not produced the custodian of records, which, defense counsel

4

argued, is required of records of a regularly conducted activity under Rule 803(6). The State responded that Catalina could testify as to what was stated in the 911 call because "it's her making these statements. She has personal knowledge of what was going on at that time and made this recording herself." The State questioned Catalina regarding the 911 recording:

[Prosecutor]: Ms. Catalina, do you recognize this?

[Catalina]: Yes. . . . It's the audio that you just played at the office, it's the 911 call.

[Prosecutor]: And how do you recognize this CD?

[Catalina]: They just played it for me in the office.

[Prosecutor]: Is this your signature on this CD?

[Catalina]: My initials and today's date.

[Prosecutor]: Have you listened to the contents of this CD?

[Catalina]: Yes.

[Prosecutor]: Are they altered in any way from the day that you made the 911 call?

[Catalina]: No.

Defense counsel took Catalina on voir dire regarding the recording:

[Defense counsel]: So you don't know if it has been altered?

[Catalina]: No, it hasn't been altered.

[Defense counsel]: How do you know that?

[Catalina]: Because that's what I said—What's in there is what I said when I called to 911.

[Defense counsel]: And you remember everything that was said in the 911 call word for word?

[Catalina]: I was scared, but I do remember that I called because he hit me.

[Defense counsel]: And you remember every voice that was on that 911 call recording?

[Catalina]: Yes.

[Defense counsel]: And you remember everything that was said by every voice in that recording? . . . How many voices are on that 911 call?

[Catalina]: It was my voice, then Abbey's husband and Abbey, because Abbey's husband was trying to take the son--my son from my husband. . . .

[Defense counsel]: So you don't know if it's been edited or not?

[Catalina]: I remember what happened, and that's why I know that it hasn't been altered.

Over Appellant's objection, the trial court admitted the recording of Catalina's 911 call.

Based on the testimony elicited at trial, we conclude that Catalina's testimony satisfies the authentication requirement of Rule 901(a). At trial, Catalina testified that: (1) she called 911; (2) she listened to the audio recording prior to trial; (3) the audio recording represented a fair and accurate recording of her conversation with the 911 operator; and (4) the recording had not been altered. Because Catalina made the 911 call, she had personal knowledge of the call and of what the State had claimed it to be, *see* Tex. R. Evid. 901(b)(1), and she was qualified to identify her own voice as well as the 911 operator's voice who she spoke to during her call. *See* Tex. R. Evid. 901(b)(5). Catalina's testimony is sufficient "to support a finding that the item is what the proponent claims it is," and the recording was therefore properly authenticated under Rule 901. *See* Tex. R. Evid. 901(a); *see also Shores v. State*, No. 14-18-00213-CR, 2018 WL 5797266, at *3 (Tex. App.—Houston [14th Dist.] Nov. 6, 2018, no pet.) (mem. op., not designated for publication) (concluding trial court did not abuse its discretion in admitting audio recording of 911 call authenticated by witness who made the call); *Montemayor v. State*, No. 13-14-00173-CR, 2016 WL 4272384, at *6 (Tex. App.—Corpus Christi-Edinburg Aug. 11, 2016, pet. ref'd) (mem. op., not designated for publication) (same). The trial court thus did not abuse its discretion in determining Catalina's testimony sufficiently authenticated the recording of the 911 call.

6

## B. Hearsay exception

Appellant next claims that because the 911 recording was not properly authenticated, it did not meet any of the hearsay exceptions enumerated in the rules of evidence.

A statement is hearsay if the declarant does not make the statement while testifying at the current trial, and the party offers the statement in evidence to prove the truth of the matter asserted in the statement. Tex. R. Evid. 801(d). Statements containing hearsay are inadmissible unless an exclusion or exception to the general hearsay rule applies. Tex. R. Evid. R. 802. "A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is an "excited utterance" which is an exception to the hearsay rule. Tex. R. Evid. 803(2); *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001).

Like the trial court's determination regarding the authenticity of evidence, we review a trial court's decision to admit or exclude evidence purportedly containing hearsay for abuse of discretion. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994) (en banc); *see also Knight v. State*, 457 S.W.3d 192, 201 (Tex. App.—El Paso 2015, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). We will uphold the trial court's decision to admit or exclude evidence if it falls within the zone of reasonable disagreement, and we afford "great discretion" to a trial court in its decision to admit evidence and give corresponding deference to its evidentiary decisions. *See Montgomery*, 810 S.W.2d at 378.

Catalina's less-than-two-minute 911 call contained about a minute of back-and-forth between Catalina, the 911 operator, and an interpreter as the operator asked some initial questions, got the interpreter on the line, and then asked more introductory questions through the interpreter. During that time, Catalina can be heard quietly crying and taking jagged breaths. When Catalina was asked what happened, she responded that her husband had hit her. When asked, "when," she

7

responded, "[j]ust now, about ten minutes ago." Catalina then affirmed that Appellant was still there while she was on the call. Catalina's jagged breathing continued during those questions. Then, her voice suddenly escalated, as she loudly cried out for Appellant not to take their child.

Appellant urges the trial court erred in admitting the 911 call under either the public record or record of regularly conducted activity exceptions to the hearsay rule. *See* Tex. R. Evid. 803(6), (8). However, we need not hold the trial court to these limitations, because if the trial court made the right evidentiary ruling under any theory of law, we will not disturb that ruling "even if the trial judge gave the wrong reason for his right ruling." *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Here, we agree with the State that the 911 recording was properly admitted as an excited utterance exception to the hearsay rule under Rule 803(2). "In determining whether a statement is an excited utterance, the court may look at the time that elapsed between the event and the statement, as well as whether the statement was in response to a question[,]" but "[t]he critical factor in determining whether a statement is an excited utterance is whether the declarant was still dominated by the emotions, fear, excitement, or pain of the event at the time of the statement." *Neal v. State*, 186 S.W.3d 690, 693 (Tex. App.—Dallas 2006, no pet.) (citing *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003)).

The testimony of Catalina, Appellant, and Ruiz all established that Catalina called 911 within minutes after she claimed that Appellant had hit her. And although Catalina's statements during the 911 call were made in response to the 911 operator's questions, that question-and-answer format follows the typical nature of a 911 call. More importantly, the testimony also established that Catalina was "still dominated by the emotions, fear, excitement, or pain of the event" at the time she made the statements during the call. *See Neal*, 186 S.W.3d at 693. Catalina's

breathing was irregular, and she sounded like she was crying, and later in the call the pitch and volume of her voice raised as she pleaded with Appellant not to take the child. Under these circumstances, we conclude that Catalina was still dominated by the emotions and fear of the event at the time she made the complained-of statements to the 911 operator; thus, the statements qualify as an excited utterance.[2] The trial court did not err in admitting the 911 call as Catalina's statements were an exception to the hearsay rule.

We overrule Appellant's first issue.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Appellant claims the trial performance of his defense counsel was objectively deficient and denied him his Sixth Amendment right to effective assistance of trial counsel. The State responds that the record is not sufficiently developed for this Court to determine whether trial counsel's performance was deficient. We agree.

An ineffective-assistance-of-counsel claim may be raised for the first time on appeal. *Robinson v. State*, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000). To successfully assert such a claim, an appellant must show that (1) trial counsel's performance was "deficient because it fell below an objective standard of reasonableness;" and (2) "a probability sufficient to undermine confidence in the outcome existed that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rylander v. State*, 101 S.W.3d 107, 109–10 (Tex. Crim. App. 2003) (en banc) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694.

---

[2] Although Appellant complains of the trial court's admission of the entirety of the 911 recording, we conclude that none of the statements made by the 911 operator or the interpreter were hearsay statements because none of them could be conceived as being offered to prove the truth of the matter asserted—i.e., that Appellant had committed domestic violence.

"The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). On direct appeal, "[a] substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "[C]ounsel's deficiency must be affirmatively demonstrated in the trial record." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Yet, "the record on direct appeal is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance and . . . the better course is to pursue the claim in habeas proceedings." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). The only exception is when counsel's conduct "was so outrageous that no competent attorney would have engaged in it." *Id.* at 101.

Appellant contends he had a viable self-defense claim because he had admitted that he grabbed Catalina's arm after she woke him, threw his cell phone at him, and escalated the situation with verbal and physical aggression. He testified he had to grab her to stop her from hitting him.

In the context of a claim of ineffective assistance of counsel due to the failure to request a jury instruction on self-defense, the Court of Criminal Appeals weighed in as follows:

> We have consistently observed that usually "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." Here, we can only speculate why counsel acted or failed to act; thus, we presume that counsel's actions were within the wide range of reasonable and professional assistance.

*Beatty v. State*, No. AP-75010, 2009 WL 619191, at *10 (Tex. Crim. App. Mar. 11, 2009) (per curiam, not designated for publication).

In this case, although Appellant filed a motion for new trial, he did not complain there of trial counsel's failure to request a jury instruction on self defense, and he raises this issue for the

10

first time on appeal. Appellant has pointed us to no attempts to develop a record concerning the motives behind trial counsel's decision not to request a self-defense instruction. Like the *Beatty* court, we can only speculate why Appellant's trial counsel acted or failed to act with respect to any self-defense claim; thus, we presume counsel's actions were within the wide range of reasonable and professional assistance. *See id*; *see also Jones v. State*, No. 05-15-01349-CR, 2016 WL 7190129, at *2 (Tex. App.—Dallas Dec. 12, 2016, no pet.) (mem. op., not designated for publication) (concluding counsel's actions in failing to request a self-defense instruction were within the wide range of reasonable and professional assistance); *Hamilton v. State*, No. 2-08-096-CR, 2009 WL 1650049, at *2 (Tex. App.—Fort Worth June 11, 2009, no pet.) (per curiam, mem. op, not designated for publication) (same); *Bazile v. State*, No. 09-22-00337-CR, 2024 WL 1895166, at *7 (Tex. App.—Beaumont May 1, 2024, no pet.) (mem. op., not designated for publication) (same).

We overrule Appellant's second issue.

## V.  TRIAL COURT'S CERTIFICATION OF APPELLANT'S RIGHT TO APPEAL

As a final matter, we address the absence of Appellant's signature on the required certification of a right to appeal. The trial court certified Appellant's right to appeal, but the certification does not bear Appellant's signature as required by Tex. R. App. P. 25.2(d); rather, it shows that trial counsel signed the certification on Appellant's behalf. Accordingly, pursuant to Rule 48.4 of the Texas Rules of Appellate Procedure, the Court ORDERS Appellant's attorney to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* Tex. R. App. P. 48.4, 68. The Court further ORDERS Appellant's attorney to comply with all of Rule 48.4's requirements.

## VI. Conclusion

We affirm the trial court's judgment.

GINA M. PALAFOX, Justice

July 25, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)