COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| RUBEN RODRIGUEZ, | § | No. 08-17-00177-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 41st District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20160D04706) |
| | § | |

## **O P I N I O N**

Appellant, Ruben Rodriguez, was convicted by a jury of burglary of a habitation with the intent to commit a felony, and the jury assessed punishment at 50-years' confinement. On appeal, Rodriguez asserts a challenge pertaining to each phase of trial. First, he challenges the legal sufficiency of the evidence to support his conviction based on his assertion that the complainant's name appearing in the indictment varied from the proof adduced at trial during the guilt innocence phase. Second, he asserts the trial court erred in admitting photographs during the punishment phase that depicted binoculars and an open knife found in his car weeks after his arrest for the charged offense. We affirm.

## **BACKGROUND**

In November of 2014, Melina Meraz signed a one-year lease to rent an apartment in El Paso on Railroad Drive, then renewed her lease the following year. Melina testified she became acquainted with Rodriguez after he went in for haircuts, once or twice a week, where she worked. The two began dating and went out together on many occasions over the course of several months.

Eventually, Melina allowed Rodriguez to move in with her and gave him his own key to her apartment. Along with his computer, he brought his clothes and shoes to her apartment which he stored in a closet. To use his computer, Rodriguez ordered cable service and personally paid for the bill. However, he did not contribute towards any of Melina's bills. Rodriguez lived with Melina for about three months until the first week of December of 2015. Melina testified that their living circumstances changed when she "saw that he was a bad example for [her] children." When she asked Rodriguez to return her key and move out of her apartment, he did as she asked and took his belongings with him.

On December 29, 2015, around 2 a.m., Melina was lying in bed but had not yet fallen asleep. Rodriguez no longer lived in the apartment. Melina described that she heard what sounded like someone trying to forcefully open her door. She immediately called 911. While speaking with the 911 operator, she opened the shades of her bedroom window and saw Rodriguez looking back at her. As she ran to her living room, Rodriguez broke through her bedroom window and entered her apartment. Rodriguez took the phone from her, grabbed her hair, pressed a knife against her neck, all while telling her he was going to take her with him. As he pulled her by her hair, he forced her outside where he struck the back of her head with his hand. Melina screamed out for help.

Kevin Campo, a high school senior who was Melina's neighbor and one of her clients,

testified that he heard her screaming for help along with a male voice telling her to shut up. Campo lived with his mother and two younger siblings at the same apartment complex. Campo described that he had been awake late at night listening to music on his headphones and scrolling on Instagram. When Campo heard Melina screaming through his headphones, he ran to his mother's room to tell her what he had heard. Although his mother warned him not to go outside, Campo ran out to help. Campo testified he saw Rodriguez taking Melina to his car while striking the back of her head. Campo intervened by punching Rodriguez in the face, which caused him to release Melina who then ran behind cars in the parking lot. As Rodriguez approached Campo with knife in hand, Campo's mother ran in between pleading for him to leave Melina alone. As Rodriguez drove off in his car, Campo's mother called 911. Campo and his mother helped Melina into their apartment to await police as she was hysterical and unable to speak.

After the State rested, Rodriguez testified in his own defense. Rodriguez described that he had met Melina around the beginning of March of 2015 when he went to get a haircut. About two weeks later, they began a relationship which led to him moving into her apartment around the end of May 2015. Rodriguez testified that he moved everything he owned to Melina's apartment even setting up his own Time Warner Cable account for television, internet, and phone service. Rodriguez admitted into evidence a photograph showing him and Melina as they appeared during their relationship. Rodriguez claimed that he and Melina still lived together at the time of the alleged burglary. He also claimed that Melina had been the aggressor and assaulted him instead. He testified that Melina and Campo were lying about the entire event.

### Trial Issues

*a. Guilt-Innocence Phase*

3

Rodriguez was charged by indictment with burglary of a habitation with the intent to commit a felony. The indictment further alleged that Rodriguez exhibited or used a deadly weapon during the commission of the offense. The burglary charge included the allegation that Rodriguez entered a habitation without the effective consent of its owner. Notably, when referring to Melina, the indictment gave her name as "Melina Meraz-Detorres," whereas she introduced herself at trial as "Melina Meraz." Additionally, the indictment also included allegations that Rodriguez had been convicted of two prior felony offenses: first, for evading arrest with a vehicle; and second, with driving while intoxicated third or more.

After both sides rested and closed, the State moved for a modification of the indictment to remove the hyphenated portion of Melina's surname. Specifically, the State asked to "abandon the dash, Detorres, that follows the Meraz, the Melina Meraz name[.]" When asked for a response by the trial court, Rodriguez's defense counsel asserted he had no objection. Later, when the court instructed the jury, the application paragraph of the jury charge contained the name "Melina Meraz," not "Melina Meraz-Detorres." Following their deliberations, the jury returned a verdict convicting Rodriguez of burglary of a habitation with the intent to commit a felony.

### b. Punishment Phase

Before the start of the punishment phase and outside the presence of the jury, defense counsel made an oral motion in limine regarding a pocketknife and binoculars that were found in Rodriguez's car when he was finally arrested weeks after the alleged burglary had been reported at Melina's apartment. During the ensuing discussion, defense counsel asserted that the prejudicial value of the items outweighed their probative value and additionally objected to their relevance. The trial court denied the motion in limine.

4

After the jury returned to the courtroom, Rodriguez pleaded true to the State's allegations that he had previously been convicted of the felony offenses of evading arrest with a vehicle and driving while intoxicated third or more. Next, the State introduced several judgments showing that Rodriguez had previously been convicted of two counts of assault, three separate misdemeanor charges of driving while intoxicated, the felony charge of driving while intoxicated third or more to which he had already pleaded true, the charge of evading arrest in a vehicle to which he had already pleaded true, and a charge of resisting arrest. Rodriguez asserted no objections.

Next, the State presented testimony from Officer Patrick Boyle of the El Paso Police Department regarding a post-burglary incident that also involved Melina, her new boyfriend, and Rodriguez. Officer Boyle testified that he and his partner, Officer Morales, were dispatched to investigate a criminal mischief at Pockets Bar in northeast El Paso on Valentine's Day of 2016. Just after 2 a.m., Melina's new boyfriend reported that he discovered all four of his tires on his vehicle had been slashed while he and Melina had been together inside the bar. Melina reported she was afraid that Rodriguez might have slashed the tires, and since Officer Boyle had been dispatched to the burglary offense back in December 2015 and remembered Rodriguez as the alleged offender, he and other officers escorted Melina and her boyfriend back to her apartment on Railroad Drive. As the officers approached Melina's apartment, they heard rustling noises. Just as they made their way towards the noise, they saw Rodriguez dash past them and run across the complex of the apartments. Officers then chased Rodriguez on foot.

Officer Boyle testified that the officers temporarily lost sight of Rodriguez but soon after found him in a vehicle with its engine running. After officers ordered Rodriguez to exit his vehicle, he ignored their commands, put his car in reverse, then started to back out of the parking lot nearly

5

striking Sergeant Gonzalez, who was one of the officers on scene. At that point, Officer Boyle drew his weapon and again ordered Rodriguez to get out of his vehicle. As Sergeant Gonzalez opened the passenger door, Rodriguez then tried to drive off all while Gonzalez held onto the door. Rodriguez struck Officer Boyle's left knee and hand, as he drove away from the parking lot at a high speed. After searching, officers found Rodriguez's car abandoned in a different area of the complex of Melina's apartment. Officers eventually spotted Rodriguez running across the complex and he was then placed under arrest.

Officer Boyle testified about an inventory search of Rodriguez's vehicle, conducted at the time of his arrest, in which officers located a pocketknife and binoculars in plain view inside the vehicle. The State tendered to defense counsel several photographs taken of the vehicle showing the knife and binoculars that were found inside. Over defense objections, the trial court admitted photographs of the knife and binoculars. When Officer Boyle was asked about the perceived significance of those items, he testified that Melina believed Rodriguez had been spying on her, that the weapon used in the earlier burglary had been described as a pocketknife, and that there had been a previous service call regarding a subject with a knife at the Pockets Bar.

After the State rested, Rodriguez called his family members and a friend to testify on his behalf. Defense witnesses testified that Rodriguez was a good and loyal person who loved his family. They testified that Rodriguez developed a drinking problem when his mother passed away from cancer. They also claimed that the burglary offense was a result of Rodriguez having "give[n] [his] heart away" and having had it "stomped on." At the end of the punishment phase, the jury assessed Rodriguez's punishment at 50-years' confinement, and the trial court sentenced him in accordance with the verdict. This appeal followed.

6

# DISCUSSION

## Issue One:  Whether there was a Material Variance in the Complainant's Name as Charged in the Indictment and Proven at Trial

In his first issue, Rodriguez contends that the evidence was legally insufficient to sustain his conviction given a material variance between the complainant's name alleged in the indictment ("Melina Meraz-Detorres") and proven at trial ("Melina Meraz").  We disagree.

### *Underlying Facts*

Rodriguez was charged by indictment with burglary of a habitation with the intent to commit a felony.  In pertinent part, the indictment alleged the following:

> [O]n or about the 29th day of December, 2015 and anterior to the presentment of this indictment, in the County of El Paso and State of Texas, RUBEN RODRIGUEZ, hereinafter referred to as Defendant,
>
> Paragraph A
>
> did then and there, with intent to commit the felony offense of Aggravated Assault with a Deadly Weapon, enter a habitation, without the effective consent of **Melina Meraz-Detorres**, the owner thereof, . . .
>
> Paragraph B
>
> did then and there intentionally or knowingly enter a habitation, without the effective consent of **Melina Meraz-Detorres**, the owner thereof, and attempted to commit or committed the felony offense of Aggravated Assault with a Deadly Weapon, . . . . [Emphasis added].

### *Standard of Review*

The Due Process Clause requires that the State prove, beyond a reasonable doubt, every element of the crime charged.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011).  Because of this requirement, persons are protected from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the

7

crime with which he is charged." *Jackson*, 443 U.S. at 315.  When reviewing the legal sufficiency of the evidence, an appellate court views all the evidence in the light most favorable to the verdict to determine whether any rational juror could have found the defendant guilty of all the essential elements of the offense beyond a reasonable doubt.  *Id.* at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).  Keeping in mind that the fact finder is the sole judge of the facts, the credibility of the witnesses, and the weight of the evidence, the legal sufficiency standard requires a reviewing court to resolve any conflicting evidence in favor of the verdict.  *Brooks*, 323 S.W.3d at 899.  We measure sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge.  *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011).  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried.  *Id.*

*Variance Law*

Occasionally, a variance occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial.  *Byrd*, 336 S.W.3d at 246.  "Variances are mistakes of one sort or another."  *Id*.  Sometimes they matter, but other times they don't.  *Id*.  Only a material variance between the indictment and proof will render the evidence legally insufficient, and immaterial variances are disregarded.  *Id*. at 248.  A variance involving the victim's name is material where it:  (1) fails to give the defendant notice of the victim's identity; or (2) would allow a second prosecution for the same offense even after considering the entirety of the trial transcript alongside the charging instrument.  *Id*. at 254-55; *Fuller v. State*, 73 S.W.3d 250, 254 (Tex. Crim. App. 2002).  Essentially, it is the identity of a victim, not their formal name, that controls and

8

guides the sufficiency of evidence review. *Byrd*, 336 S.W.3d at 253. Thus, minor discrepancies in a victim's name, as alleged and proven at trial, are deemed immaterial. *See Byrd*, 336 S.W.3d at 248; *Fuller*, 73 S.W.3d at 253.

In *Fuller*, the Court of Criminal Appeals addressed a situation in which the indictment alleged that the defendant committed an injury to an elderly individual, which the indictment charged as an offense against "Olen M. Fuller," who is defendant's father. *Fuller*, 73 S.W.3d at 251. Although the prosecution proved that the defendant injured his elderly father by hitting him in the face, the defendant's father was referred to at trial as "Mr. Fuller" or "Buddy." *Id*. In other words, the prosecution presented no evidence that defendant's father was named "Olen M. Fuller." *Id*. Consistent with the indictment, the jury charge instructed the jury to convict if it found that the defendant had committed the offense against "Olen M. Fuller." *Id*.

On appeal, the defendant successfully argued to the intermediate court that the evidence was insufficient to support his conviction because the prosecution failed to prove the victim's name as alleged in the indictment. *Id*. The prosecution then sought discretionary review arguing that the court of appeals erred in reversing defendant's conviction without first making a materiality inquiry into whether the variance between the name appearing in the indictment and the proof at trial had prejudiced the defendant. *Id*. at 252. First, the Court of Criminal Appeals held that the variance between the indictment and proof at trial was immaterial. Second, the Court found that Texas law did not define the victim's name as a substantive element of the offense and only required proof of every fact necessary to constitute the crime charged. *Id*. at 253.

About a decade later in *Byrd*, the Court of Criminal Appeals provided further guidance when it agreed with a defendant that the evidence was insufficient to support her conviction due

9

to a material variance in the proof presented at trial where the State alleged in its charging instrument that she committed theft of property from "Mike Morales" but proved simply that Wal-Mart owned the property. *Byrd*, 336 S.W.3d at 244-45. At no time during the trial did the State provide any connection between a "Mike Morales" and Wal-Mart or any of the property that the defendant stole. *Id*. at 245. In its reasoning, the Court concluded that the discrepancy between the allegation in the charging instrument and the proof at trial was not merely a variance but an absolute failure of proof where the State's proof was "that of an entirely different person or entirely different property[.]" *Id*. at 258.

*Application*

We conclude that this case presents a situation more akin to *Fuller* than to *Byrd*, and any variance demonstrated here was immaterial. Melina testified that she met Rodriguez when he came in for a haircut and he returned to her establishment for other haircuts as often as twice a week. Soon they were dating and spent time together over the course of several months. Eventually, Melina provided Rodriguez with a key to her apartment and he moved in his belongings. Although he did not pay other bills, Rodriguez paid for a cable subscription for his own use. Proof at trial included Rodriguez himself testifying about his relationship with Melina. As opposed to being surprised at trial, Rodriguez admitted a photograph for the jury to see that he and the same woman who earlier claimed to be a victim had, at some prior time, had a relationship with him. Lastly, when the State moved to abandon the hyphenated portion of Melina's surname, Rodriguez voiced no objection. For all these reasons, the evidence at trial established that the woman who testified at trial ("Melina Meraz") was the same woman who was alleged to be a victim in the indictment ("Melina Meraz-Detorres").

10

Because the record showed Rodriguez knew his victim's identity and a second prosecution would be barred if based on the same gravamen of offense as shown in the transcript of this case, the variance between Melina's name as alleged in the indictment and proven at trial was immaterial and did not render the remainder of the evidence legally insufficient. *See Fuller*, 73 S.W.3d at 251-54 (holding that any variance was immaterial between the victim's name as alleged in the indictment ["Olen M. Fuller"] and the name proven at trial [referenced as "Mr. Fuller" and "Buddy"] where: (1) there was no indication in the record that the defendant did not know whom he was accused of injuring or that he was surprised by the proof at trial; and (2) the variance did not subject the defendant to another prosecution for the same offense); *Delgado v. State*, No. 08-15-00041-CR, 2018 WL 2424052, at *1, 3-4 (Tex. App. – El Paso May 30, 2018, no pet.) (not designated for publication) (where this Court held that there was no material variance between the State's misspelling of the victim's name in the indictment ["Cyrstal Martinez"] and her name proven at trial ["Crystal Martinez"] where: (1) nothing in the record indicated the defendant was unaware that the victim he was accused of assaulting was his on-again, off-again girlfriend of ten years; and (2) the variance would not subject the defendant to a second prosecution for the same assault against Crystal with a correct spelling of her name); *Rodriguez v. State*, No. 08-01-00308-CR, 2003 WL 550299, at *4-5 (Tex. App. – El Paso Feb. 27, 2003, no pet.) (not designated for publication) (where this Court held that there was no material variance between the State's misnomer of the victim in the indictment ["Francisco Medina"] and his name proven at trial ["Francisco Mendoza"] where: (1) the defendant's defensive theory asserted at trial did not depend on the name with which the victim was identified; and (2) the record was replete with evidence that the defendant knew she killed Francisco Mendoza).

For the above reasons, we overrule Rodriguez's first issue.

### Issue Two:  Whether the Trial Court Erred in Admitting Photographs of Binoculars and an Open Knife found in Rodriguez's Car as Punishment Evidence

In his second issue, Rodriguez contends that the trial court erred during the punishment phase by admitting photographs of a pair of binoculars and an open knife found in his car when he was arrested six weeks after the offense for which he was convicted.  In his brief to this Court, he argues that the complained-of evidence should have been excluded under both Rule 404 and Rule 403 of the Texas Rules of Evidence.  *See* TEX. R. EVID. 403, 404.  To the extent that these arguments were adequately briefed, we will address each in turn.

### A.  Standard of Review

*Standard of Review for Admission of Evidence*

A trial court's decision on the admissibility of evidence is reviewed under an abuse of discretion standard.  *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).  A trial court abuses its discretion only when it acts without reference to any guiding rules and principles or acts arbitrarily and unreasonably.  *Id*.

### B.  Rule 404 Argument

In his brief to this Court, Rodriguez asserts, in nominal fashion, that the trial court erred in admitting evidence of the knife and binoculars under Rule 404 of the Texas Rules of Evidence.  He argues that the trial court failed "to perform an analysis under Texas Rule of Evidence 404, before admitting evidence that an open knife and binoculars were found in his car when he was arrested [weeks] after the incident for which he was convicted."  He also references an absence of notice by the State of its intent to use the possession of binoculars and knife as bad acts or extraneous offenses.  *See* TEX. R. EVID. 404(b)(2).  Beyond merely stating that the complained-of

12

evidence was not relevant to any sentencing issue, Rodriguez does not develop his argument nor cite to specific authority to show how the trial court committed evidentiary error in relation to Rule 404.

The argument section of an appellate brief must contain a clear and concise argument for the contentions made with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). When a party's argument consists only of conclusory statements without proper citation to appropriate authorities or lacks substantive analysis, the party has inadequately briefed their claim and presents nothing for our review. *See Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); *Pena*, 2019 WL 1374152, at *14. Here, any argument under Rule 404 that we could possibly construe from Rodriguez's brief consists of conclusory assertions and lacks substantive analysis affording this Court the proper guidance to explain how the trial court may have committed any evidentiary error. To the extent that Rodriguez makes a Rule 404 argument under his second issue, we find such an argument to be inadequately briefed. [1] *See Russeau*, 171 S.W.3d at 881; *Pena*, 2019 WL 1374152, at *14. Regarding Rodriguez's complaint that the trial court erred in admitting evidence over his Rule 404 objection, we note, as he does in his own brief, that any evidence of an extraneous crime or bad act is admissible in the punishment phase of a trial notwithstanding Rule 404 of the Texas Rules of Evidence. TEX. CODE CRIM. PROC. ANN. art.

---

[1] In addition, Rodriguez appears to articulate a lack-of-notice-argument in his brief under Rule 404 as a separate stand-alone argument within this same issue. *See* TEX. R. EVID. 404(b)(2) ("On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence--other than that arising in the same transaction--in its case-in-chief."). However, this argument was not preserved for our review because, aside from not having objected on that basis in the trial court, Rodriguez did not seek a continuance when the State made clear its intent to introduce the complained-of evidence. *See Knight v. State*, 457 S.W.3d 192, 203 (Tex. App. – El Paso 2015, pet. ref'd) (holding that the defendant failed to preserve her complaint regarding lack of notice under Rule 404(b) where she did not first seek a continuance to mitigate the effects of any surprise to her). We would thus overrule this second thrust of his argument, as well.

13

37.07, § 3(a)(1); *see also Sims v. State*, 273 S.W.3d 291, 296 (Tex. Crim. App. 2008) (observing that specific misconduct evidence is expressly made admissible at the punishment phase of trial notwithstanding Rule 404). We thus overrule any Rule 404 complaint made by Rodriguez.

### C. Rule 403 Argument

*Preservation Rules and Motions in Limine*

To preserve a complaint for appellate review, a party must timely object and state the specific grounds for the ruling sought. TEX. R. APP. P. 33.1(a)(1)(A). This is a judge-protecting rule of error preservation based on "party responsibility," and it requires the complaining party on appeal to "at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question." *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). Therefore, a relevancy objection under Rules 401 and 402 will not suffice to preserve error under Rule 403. *Sony v. State*, 307 S.W.3d 348, 355-56 (Tex. App. – San Antonio 2009, no pet.); *Coutta v. State*, 385 S.W.3d 641, 662-64 (Tex. App. – El Paso 2012, no pet.); *Gossett v. State*, No. 08-11-00225-CR, 2013 WL 3943074, at *2 (Tex. App. – El Paso July 31, 2013, no pet.) (not designated for publication); *Avendano v. State*, No. 08-06-00072-CR, 2008 WL 2967012, at *5 (Tex. App. – El Paso July 31, 2008, no pet.) (not designated for publication) (cases holding that a relevancy objection at trial did not preserve error for an argument on appeal based on Rule 403); *see also* TEX. R. EVID. 401, 402, 403.

Also, it is axiomatic that motions in limine do not preserve error. *See, e.g.*, *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007); *Griggs v. State*, 213 S.W.3d 923, 926 n.1 (Tex. Crim. App. 2007); *Coutta*, 385 S.W.3d at 664. A motion in limine is a procedural device

14

that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make. *Lohmann v. Lohmann*, 62 S.W.3d 875, 881 (Tex. App. – El Paso 2001, no pet.). The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. *Id*. A ruling on a motion in limine does not purport to be one on the merits but one regarding administration of the trial. *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App. – Austin 2000, pet. ref'd). Thus, the remedy for a violation of a ruling on a motion in limine rests with the trial court and may include holding a litigant in contempt or using other remedies or sanctions. *Id*. (citing *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972)).

*Waiver*

In this case, defense counsel made an oral request for, specifically, a motion in limine regarding the knife and binoculars that were found in Rodriguez's car and asserted two bases for his limine request: (1) the prejudicial value of the items outweighed any probative value; and (2) the items were irrelevant. The trial court denied his limine request but invited defense counsel to later approach on any other objection as he indicated that he wanted to "mull . . . over" other considerations. Nonetheless, as the trial court appeared to recognize, any bases asserted by defense counsel for his motion in limine request cannot serve to preserve error on those bases. *See Roberts*, 220 S.W.3d at 533 ("However, although appellant filed a motion in limine, he did not object to the prosecutor's questions at the time they were asked and answered. Motions in limine do not preserve error. Because appellant failed to lodge a proper objection, he failed to preserve error.") [Internal citations omitted]; *Griggs*, 213 S.W.3d at 926 n.1 ("A motion in limine, whether granted or denied, preserves nothing for appellate review."); *Coutta*, 385 S.W.3d at 664 ("A motion in

15

limine is a preliminary matter which does not preserve any complaints for appellate review and, to preserve such complaint, a party must object at the time the complained-of evidence is offered at trial.").

Later during the punishment phase of trial, when the State began laying the predicate for admission of evidence of the knife and binoculars by way of photographs showing the items, defense counsel objected on the following bases: (1) relevance; and (2) "404." And before the photographs were formally admitted, defense counsel stated only that he wanted to renew his prior objections. We note that neither of the bases lodged for exclusion of the evidence rested on Rule 403. Thus, Rodriguez's second issue on appeal was not preserved for our review. *See Sony*, 307 S.W.3d at 355-56; *Coutta*, 385 S.W.3d at 662-64; *Gossett*, 2013 WL 3943074, at *2; *Avendano*, 2008 WL 2967012, at *5. Even if the issue had been preserved, nonetheless, we find that it fails on the merits as well as is discussed more fully below.

*Applicable Law*

Evidence is not unfairly prejudicial simply because it injures another party's case, as such is the central point of offering evidence. *See Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007); *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). Rule 403 creates a presumption of admissibility of all relevant evidence and authorizes a trial court to exclude evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *See Hammer v. State*, 296 S.W.3d 555, 568 n.39 (Tex. Crim. App. 2009); *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

When conducting a Rule 403 analysis, a trial court must balance the following: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for

16

that evidence against (3) any tendency of the evidence to suggest decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *Iglesias v. State*, 564 S.W.3d 461, 468 (Tex. App. – El Paso 2018, no pet.). As relevant here, section 3(a)(1) of article 37.07 of the Code of Criminal Procedure dictates that matters relevant to sentencing include, but are not limited to, the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and any other evidence of an extraneous crime or bad act for which the defendant could be held criminally responsible. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). The question at punishment is what sentence should be assessed, and the Legislature intended to allow a jury to consider a wide range of evidence "critical to an enlightened determination of punishment." *Ellison v. State*, 201 S.W.3d 714, 718 (Tex. Crim. App. 2006).

### *Application*

At the outset, Rodriguez argues that the evidence depicting the knife and binoculars had limited probative value in light of the evidence of his Valentine's Day arrest, during which he was charged with committing new offenses, and other evidence including his prior convictions. However, the fact that other relevant punishment evidence was admitted does not prohibit the State from offering additional punishment evidence. Officer Boyle testified that the evidence of the knife and binoculars found in Rodriguez's car had significance because Melina believed Rodriguez

had been spying on her, the weapon used in the burglary was a pocketknife, and there had been a previous service call regarding a subject with a knife while Melina was at the Pockets Bar. These inferences were certainly relevant to the jury's assessment of punishment for Rodriguez. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1).

Considering the countervailing factors weighing against admissibility, we find no reason to believe that the probative value of the knife and binoculars evidence was substantially outweighed by the danger of any of those factors. The State's presentation of the knife and binoculars evidence covered a mere three pages in a 130-page punishment record, was quickly developed, and was elicited through a single witness. The photographs depicting these items were neither visually remarkable nor emotionally compelling and comprised only four of the eighteen exhibits admitted by the State at punishment. These facts all weigh in favor of admission. *See Bargas v. State*, 252 S.W.3d 876, 893 (Tex. App. – Houston [14th Dist.] 2008, no pet.); *Pena v. State*, No. 08-16-00236-CR, 2019 WL 1374152, at *10 (Tex. App. – El Paso Mar. 27, 2019, pet. filed) (not designated for publication) (op. on reh'g) (cases holding that it was unlikely a jury was affected in some irrational or indelible way where time spent developing the evidence at issue was minimal and the evidence was neither lengthy, graphic, or emotionally charged). In addition, the evidence was neither scientific nor of a nature that might have left the jury to give it undue weight. *Compare Gigliobianco*, 210 S.W.3d at 641 (observing that certain categories of evidence, such as scientific evidence, might mislead a jury that is not properly equipped to evaluate the probative force of the evidence).

Balancing the factors favoring admission against the countervailing factors, we hold that the trial court did not abuse its discretion in admitting the evidence of the knife and binoculars

18

found in Rodriguez's car.  Thus, even assuming Rodriguez preserved this complaint for our review, we overrule his second issue for this reason, as well.

## CONCLUSION

Having overruled Rodriguez's issues, we affirm the trial court's judgment.


GINA M. PALAFOX, Justice

June 28, 2019

Before Rodriguez, J., Palafox, J., and Chew, C.J. (Senior Judge)
Chew, C.J. (Senior Judge), sitting by assignment

(Do Not Publish)